**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **BRYAN PRETTYMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:18-CV-00389-ODS** |
| | ) | |
| **APPLE CENTRAL KC, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY SUGGESTIONS IN SUPPORT OF DEFENDANT'S MOTION
TO STRIKE PLAINTIFF'S RETAINED EXPERT ATUL PATEL, MD AND TO PRE-
CLUDE EXPERT WITNESS TESTIMONY PREMISED ON DAUBERT**

**COMES NOW** Defendant Apple Central KC, LLC ("Applebee's") and for its Reply

Suggestions in Support of its Motion to Exclude the Testimony of Plaintiff's Retained Medical

Expert, Atul Patel, M.D., and in Reply to Plaintiff's Response states:

Plaintiff takes no issue that this Court is charged with the role as a gatekeeper in deter-

mining whether expert witness testimony is admissible. *Bonner v. ISP Technologies, Inc.*, 259

F.3d 924, 929 (8th Cir. 2001). [1] Further, Plaintiff does not dispute a physician retained in a case

solely to express medical causation opinions must satisfy a *Daubert* standard by performing a

valid differential diagnosis. *Turner v. Iowa Fire Equipment Co.*, 229 F.3d 1202, 1207-08 (8th

Cir. 2000). Accordingly, the only issue before the Court is whether Dr. Patel's testimony has

met those requirements and, thus, admissible under *Daubert*.

---

[1] "(T)he district court performs a gatekeeping function with respect to scientific evidence, ensur-
ing that evidence submitted to the jury meets Rule 702's criteria for relevance and reliability."
*Id.* at 929.

Dr. Patel's testimony fails because:

*1. Daubert sets forth four factors to guide district courts in resolving admissibility questions:*

*(a) Whether the expert's methodology has been tested;*

*(b) Whether the technique has been subjected to peer review and publication;*

*(c) Whether the technique has a known or knowable rate of error; and*

*(d) Whether the technique has been generally accepted in the scientific community.*

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993).

Here, there has been no methodology with Dr. Patel. There was no technique used and, as such, there is nothing which could be subject to peer review, publication comment, or general acceptance in the medical community.

*2. With regard to medical causation testimony this Daubert standard is met if a proper differential medical diagnosis is made.*

There was no differential diagnosis. Nothing was "ruled in" nor "ruled out."

. . . (A) physician begins by "ruling in" all scientifically plausible causes of the plaintiff's injury. The physician then "rules out" the least plausible causes of injury until the most likely cause remains. The final result of a differential diagnosis is the expert's conclusion that a defendant's product [or actions] caused (or did not cause) the plaintiff's injury.

*Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001). A "differential diagnosis [is] a technique that identifies the cause of a medical condition by eliminating the likely causes until the most probable cause is isolated." *Turner*, id. at 1208; *Bland v. Verizon Wireless*, 538 F.3d 893, 897 (8th Cir. 2008).

No objective testing was done. No other sources of injury were tested or even considered in any way. Dr. Patel simply says since Mr. Prettyman testified he slipped and fell on his but-

tocks that such must be the root cause of his erectile dysfunction. Dr. Patel then bootstraps this opinion by saying that erectile dysfunction can be caused by an injury to one of three nerves in the groin region and he has seen injury to one of those three nerves cause erectile dysfunction in the past with other patients so that must be Mr. Prettyman's problem. Dr. Patel does not consider to "rule in" or attempt to "rule out" diabetes, obesity, depression, or age (all common erectile dysfunction factors in older males), a combination of the four, or anything else, as a cause as to Mr. Prettyman's issues.

### 3. Dr. Patel cannot opine as to any objective signs of injuries sustained by Mr. Prettyman because there are none.

Dr. Patel acknowledges all objective testing performed on Mr. Prettyman shows no acute injury; only preexisting degenerative issues; and no evidence of neuropathy.

**Q. Based upon the records that you've reviewed then, Dr. Patel, did you see any objective signs of injury with Mr. Prettyman at any of those levels S2, S3, S4?**

**A. No. (Patel, P. 32, lines 13-16).** [2]

. . .

**Q. Based upon then your review of the medical records and also your review of the radiology films, did you find any objective evidence of spinal cord injury sustained by Mr. Prettyman in the fall of November 23rd, 2016?**

**A. No, I did not.**

**Q. Did you find any objective evidence of any type of penal injury to Mr. Prettyman as a result of the fall of November 23rd, 2016?**

**A. No.**

---

[2] Dr. Patel's referenced deposition testimony was attached, in full, as Exhibit B, to Defendant's Suggestions In Support of Defendant's Motion to Strike Plaintiff's Retained Expert Atul Patel, MD and to Preclude Expert Witness Testimony Premised on Daubert **[Doc. No. 35]**.

**Q. . . . . Based upon your review of the medical records and the radiology films, did you find any objective evidence of injury that Mr. Prettyman sustained in the fall of November 23, 2016?**

**A. No.**

**Q. The only indications of any injuries or problems were based upon Mr. Prettyman's subjective complaints of pain, is that fair?**

**A. That's fair. Correct. (Patel, p. 32, line 24- p. 33, line 23).**

Dr. Patel's testimony, with regard to the erectile dysfunction issue, is only that Mr. Prettyman's pre-existing low back and left leg pain were exacerbated in his fall and that such pain *may* be contributory to cause erectile dysfunction. Dr. Patel testified that pain medication that Mr. Prettyman was taking (which he conceded he did not know were even being taken presently) and the lack of sensation in his penis *could* all be contributory.

Dr. Patel has invoked no scientific medical methodology in his opinions. Dr. Patel's opinions are not based upon any examination of Mr. Prettyman; Dr. Patel's opinions are not based upon any objective testing—as none was performed by him; Dr. Patel's testimony is solely based upon Plaintiff's testimony that his low back and left leg pain were exacerbated by his fall at Applebee's.

**FOLLOW UP CROSS BY MR. HICKS:**

**Q. And while we're talking about lack of sensation, the earlier reports that -- in 2013 that Mr. Prettyman was having all had to do with pain in the groin area. Do you recall seeing anything in his prior history where he ever complained of a lack of sensation in the groin area prior to his fall?**

**A. No.**

Q. And if he testifies that's the first time he ever experienced a lack of sensation in that area, would then your opinion be just as you stated in the report that the lack of sensation in the groin area is also likely to be contributing?

A. Yes.

Q. And that that lack of sensation then would more likely than not be related to the fall?

A. Correct. (Patel, p. 35, line 15- p. 36, line 5).

. . . .

Q. So the last thing, the area that could be affecting Mr. Prettyman from a nerve standpoint in terms of his erectile dysfunction, describe for us where those injuries -- where those nerves are that would be affecting him.

A. Okay. So the sensation to the penis and the scrotum in that area comes directly from three different nerves in that region. So there's the ilioinguinal nerce (sic, nerve) which goes along the inguinal ligament and down there, and then there's another nerve called the genitofemoral nerve, which also supplies the scrotum and the penis, and the third one is the pudendal nerve, p-u-d-e-n-d-a-l nerve. So those are the ones, so all those can be doing it and the patients who have had issues with previous C-sections or hernia repairs and then something happened and there may be some scar and then the nerve gets stretched and then the genitofemoral nerve is often affected or the ilioinguinal and then that can give them symptoms of numbness or pain.

Q. So there are last two questions. First one, has any of those nerves been tested for Mr. Prettyman?

A. No.

Q. Second question, given what we know about how you described some of these tests just simply don't show the damage. Even if those injuries or those nerves are tested and don't show objective signs of injury, would it still be your opinion that the injuries that Mr. Prettyman suffered and describes are still consistent with an injury to one of those nerves?

A. Yes.

QUESTIONS BY MR. WULFF:

Q. Without any testing though, Doctor, what do you base that opinion on?

A. The distribution of the symptoms, the type of symptoms and his history of the areas where he has had problems previously.

Q. So we're back down to what his history is is what he told the physicians in the records?

A. Correct.

Q. Mr. Hicks was asking you some questions, and I believe he used the terminology his injuries. What injuries did Mr. Prettyman sustain with regard to his back in the fall of November 23, 2016?

A. No specific fracture or new herniation or necessarily disc bulge, but probable irritation and exacerbation of his chronic pain issues from the back.

Q. What do you base that upon since there's no objective finding of any injury?

A. Based on clinical experience and seeing this in other patients. When it happens often where they have chronic conditions, they fall, they have no objective test to show there's anything new going on, but the patient is having pain and more symptoms.

**Q. Okay. So we're again down to Mr. Prettyman's subjective complaints of pain?**

**A. Correct.  (Patel, p. 38, line 1- p. 40, line 8).**

The role of expert testimony is to provide the trier of fact with an expert's specialized knowledge to assist in determining ultimate issues of fact, however, not all expert opinions are admissible. *See Shannon v. Koehler*, 2011 WL 10483363, *29 (N.D. Iowa September 16, 2011); citing *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir. 1985).  "Opinions that are phrased in terms of inadequately explored legal criteria or that merely tell the jury what result to reach are not deemed helpful to the jury, Fed. R. Evid. 704 advisory committee's note, and thus, are not admissible under Rule 702." *Id*. (internal quotations omitted) (citing *U.S. v. Arenal* at 269).  Such is Defendant's challenge to Dr. Patel's testimony.  Dr. Patel is offering nothing to the jury from a medical standpoint which can be of assistance to the jury's decision here.  Absolutely no medical science has been offered.  Plaintiff concedes as much in his response.  Dr. Patel testifies that Plaintiff's back issues were exacerbated by his fall contributing to his chronic low back pain and pain into his left leg.  Clearly this is testimony which can be presented by Mr. Prettyman himself and calls for no expert testimony.  No scientific or medical expertise is needed for Mr. Prettyman to say his back pain increased.  Dr. Patel, by opining that Mr. Prettyman's pain in his low back and left leg was exacerbated from his fall "within a reasonable degree of medical certainty," is doing nothing more than bootstrapping Mr. Prettyman's subjective complaints.  Further, Dr. Patel opines that the lack of sensation in Mr. Prettyman's penis and scrotum area could be related to three potential issues dealing with the nerve in that region – the illoinguinal nerve, the genitofemoral nerve, or the pudendal nerve.  Dr. Patel has no evidence, none whatsoever, that any of those nerves were damaged in the fall, much less whether any damage to any one of those three nerves is now causing Mr. Prettyman's issues.  It is all conjecture.  Dr. Patel admits that none of

those nerves have been tested for injury. Dr. Patel attempts to save his testimony, however, by further stating that even if he had tested the nerves for injury and no objective sign of injury was seen to those nerves, it would still be his opinion that Mr. Prettyman's erectile dysfunction issues are consistent with an injury to one of those nerves.

The testimony from Dr. Patel is circular. He has no evidence of any objective signs of injury, however, he is of "medical certainty" that there must be an injury. This is true even though he can find no evidence of injury. He admits that he has not tested for any objective sign of injury and bases his testimony completely on subjective complaints by Mr. Prettyman, however, he then circles back and says even if I had done the testing, and there is no evidence of injury, then it is still my opinion "with medical certainty" that there still must be an injury. "There is no injury but I believe there must be an injury; and, even if we find injury we do not always find it but I still believe there is an injury."

Dr. Patel is offering nothing to assist the jury from a medical standpoint. He simply testifies that he is board certified physiatrist, he has reviewed the medical records and the deposition testimony of Mr. Prettyman, and he thinks Mr. Prettyman's erectile dysfunction issues are due to the fall so the jury should believe him. This is precisely what *Daubert* precludes. There must be **something** to support Dr. Patel's opinions other than his thoughts—some "methodology, some technique subject to peer review and publication, with a known rate of error, generally accepted in the medical community." *Daubert,* 509 U.S. at 593-94.

## **CONCLUSION**

It is respectfully requested that this Honorable Court grant Defendant's Motion to Strike Plaintiff's Retained Expert Atul Patel, MD and to Preclude His Expert Witness Testimony Premised on Daubert along with any such further orders as this Honorable Court deems just and proper under the circumstances.

/s/ Robert J. Wulff
Robert J. Wulff, Bar No.: 34081MO
EVANS & DIXON, LLC
Attorneys for Defendant
211 North Broadway, 25th Floor
St. Louis, Missouri 63102
(314) 552-4054 (Phone)
(314) 884-4454 (Fax)
rjwulff@evans-dixon.com

## **CERTIFICATE OF SERVICE**

I certify that on May 2, 2019 the foregoing instrument was electronically filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

/s/ Robert J. Wulff

DMS-#4082488-v1-Deft_s_Reply_Sugg_etc

-9-